SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA ex rel. THOMAS C. HORNE, Attorney General, | ) ) ) | Arizona Supreme Court No. CV-11-0291-PR |
| Plaintiff/Appellant/Cross-Appellee, | ) ) ) | Court of Appeals Division One No. 1 CA-CV 09-0759 |
| v. | ) ) | |
| AUTOZONE, INC., a Nevada corporation, | ) ) ) | Maricopa County Superior Court No. CV2006-010186 |
| Defendant/Appellee/Cross-Appellant. | ) ) ) ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Larry Grant, Judge

**VACATED AND REMANDED**
_____

Opinion of the Court of Appeals, Division One
227 Ariz. 471, 258 P.3d 289 (App. 2011)

**VACATED IN PART**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                Phoenix
     By   Carolyn R. Matthews, Assistant Attorney General
Attorneys for State of Arizona

RENAUD COOK DRURY MESAROS, PA                            Phoenix
     By   William W. Drury, Jr.
          James L. Blair
          Ronald I. Rubin
          N. Todd McKay
          Kevin R. Myer
And

PAUL G. ULRICH, P.C.                                     Phoenix
     By   Paul G. Ulrich
          Melinda K. Cekander
Attorneys for Autozone, Inc.

FENNEMORE CRAIG, P.C.                                          Phoenix
     By   Timothy J. Berg
          Alexander R. Arpad
Attorneys for Amicus Curiae Arizona Retailers Association
_____

**H U R W I T Z**, Vice Chief Justice

**¶1**      We are asked in this case to interpret the Arizona Consumer Fraud Act ("CFA"), A.R.S. §§ 44-1521 to -1534.

**I.**

**¶2**      In 2001, the Arizona Department of Weights and Measures began investigating AutoZone, Inc., an automobile parts and accessories retailer.  The investigation concerned AutoZone's compliance with A.R.S. § 41-2081 (the "Pricing Act"), which prohibits mispricing and requires a seller to display prices on merchandise or at the point of display.  As a result of this investigation, the Department fined AutoZone for violating the Pricing Act several times between 2001 and 2006.  *See* A.R.S. § 41-2115 (authorizing civil penalties).

**¶3**      In 2006, the State sued AutoZone under the CFA.  The State alleged that, by violating the Pricing Act, AutoZone had also violated A.R.S. § 44-1522(A), which provides as follows:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled,

2

deceived or damaged thereby, is declared to be an unlawful practice.

The State requested injunctive relief, civil penalties, and restitution to consumers. *See* A.R.S. § 44-1528(A)(2) (authorizing restitution remedy).

¶4        The State moved for partial summary judgment, arguing in relevant part that the clause in § 44-1522(A) prohibiting "any . . . deceptive act or practice . . . in connection with the sale or advertisement of any merchandise" (the "Act Clause") imposes strict liability for not pricing goods as required by the Pricing Act. AutoZone cross-moved, arguing in part that any failure to price goods was governed by another clause in § 44-1522(A) (the "Omission Clause") which prohibits "omission of any material fact with intent that others rely upon such . . . omission."

¶5        AutoZone also sought summary judgment with respect to the State's restitution claim. In response, the State abandoned its claim for restitution to consumers under § 44-1528(A)(2). Instead, it sought disgorgement to the Attorney General of sums acquired in violation of the CFA under § 44-1528(A)(1), which allows a court to "make such orders or judgments as may be necessary to . . . [p]revent the use or employment by a person of any unlawful practices."

¶6      The superior court denied both parties' motions.  The court agreed with AutoZone that the Omission Clause governed the alleged non-pricing, but found disputed issues of fact as to whether AutoZone had acted with the intent to mislead required by that Clause.  The court also held that disgorgement to the State may, under some circumstances, be appropriate under § 44-1528(A)(1).

¶7      AutoZone and the State each again moved for summary judgment based on sharply different interpretations of the superior court's rulings.  A new judge heard those motions and, although finding disputed issues of material fact, nonetheless entered summary judgment in AutoZone's favor "by necessity," ostensibly to obtain appellate guidance on interpretation of the CFA.

¶8      The court of appeals vacated that judgment and remanded the case for further proceedings.  *State ex rel. Horne v. AutoZone, Inc.*, 227 Ariz. 471, 485 ¶ 46, 258 P.3d 289, 303 (App. 2011).  The court held that because the Pricing Act imposes a statutory duty to price items, any failure to do so was not an omission, but rather an "act," *id.* at 482 ¶ 32, 258 P.3d at 300, and thus governed by the Act Clause.  The court concluded that under *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 486, 626 P.2d 1115, 1118 (App. 1981), the Act Clause required proof only of "intent to do the act

4

involved." *AutoZone*, 227 Ariz. at 478 ¶¶ 18-19, 258 P.3d at 296. The court of appeals also held that the CFA permits disgorgement to the State, *id.* at 483-84 ¶ 39, 258 P.3d at 301-02, and awarded the State attorney's fees and costs pursuant to A.R.S. § 44-1534, *id.* at 485 ¶ 44, 258 P.3d at 303. Judge Gemmill dissented in part, arguing that the CFA does not authorize disgorgement to the State. *Id.* at 485-86 ¶¶ 47-53, 258 P.3d at 303-04 (Gemmill, J., concurring in part and dissenting in part).

¶9       We granted review on three issues: (1) whether the Act Clause or the Omission Clause governs the State's "non-pricing" claims; (2) whether the CFA authorizes disgorgement to the State; and (3) whether the court of appeals erred by awarding the State interlocutory attorney's fees.[1] We exercise jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24 (2003).[2]

---

[1]    We did not grant review of other aspects of the opinion below, including the holdings that remedies under the CFA are not duplicative of those under the Pricing Act and that proof of violations of the Act Clause, including the allegations of mispricing in this case, require only a showing of intent to do the act involved.

[2]    We do not approve the trial judge's granting of a judgment "by necessity" to obtain appellate review in a case in which the judge found disputed issues of material fact. Under those circumstances, parties may seek special action relief, and trial judges should not issue judgments simply to evade the general requirement of a final judgment for appellate review. But on its face, the judgment in this case was final, ordering

¶10     AutoZone argues that a non-pricing allegation necessarily involves an omission that is governed by the Omission Clause, which requires proof that the omission is material and made with intent that a consumer rely thereon. The State argues that because the Pricing Act imposes a duty to price, the sale of non-priced goods should instead be evaluated under the Act Clause, which requires only proof of intent to do the alleged act. Both parties thus view the two clauses as describing mutually exclusive categories of prohibited conduct, and they ask us to pigeonhole AutoZone's alleged non-pricing into one or the other.

¶11     We accept neither argument. Because the clauses require different elements of proof, we conclude that the legislature intended generally to distinguish an "omission" from an "act." In common parlance, "[o]mission denotes the negative. Act is the expression of will, purpose. Omission is inaction. Act carries the idea of performance. Omission carries the idea of refraining from action." *Terry v. Lincscott Hotel Corp.*, 126 Ariz. 548, 553, 617 P.2d 56, 61 (App. 1980) (quoting *Randle v. Birmingham Ry., Light & Power Co.*, 53 So. 918, 921 (Ala. 1910));

_____

dismissal with prejudice of all claims raised by the State. The court of appeals thus appropriately exercised jurisdiction under A.R.S. § 12-2101(A), even though the trial judge's reasons for entering the judgment were misguided.

*see* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language."). An omission does not always constitute an act. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 56 at 373 (5th ed. 1984) ("In the determination of the existence of a duty, there runs through much of the law a distinction between action and inaction. . . . that is to say, between active misconduct . . . and passive inaction.").

¶12     We find no indication in the text of the CFA that the legislature intended to blur the generally recognized distinction between an act and an omission. Nor does the CFA provide that failure to perform a duty imposed by a separate statute, such as the Pricing Act, should be automatically covered by the Act Clause. Rather, the CFA itself imposes the actionable duty – to refrain from a "deceptive act or practice" or an "omission of any material fact with intent that others rely" thereon. A.R.S. § 44-1522(A).[3]

¶13     In concluding that "a party has committed a deceptive act if it failed to disclose information it was under a duty to disclose," *AutoZone*, 227 Ariz. at 481 ¶ 31, 258 P.3d at 299, the

---

[3]     The Pricing Act, in contrast, has no apparent *mens rea* requirement, nor does it require that a failure to price be material to a sale. The opinion below noted that "AutoZone and Amicus argue, and the State does not dispute, the State is entitled to assess civil penalties under the Pricing Act without any showing of intent or mental state." *AutoZone*, 227 Ariz. at 483 ¶ 37, 258 P.3d at 301.

court of appeals relied in part on *Fenwick v. Kay American Jeep, Inc.*, 371 A.2d 13 (N.J. 1977). That case construed New Jersey's consumer fraud act and held that a car dealer's failure to disclose odometer readings in advertisements constituted a "deception." *Id.* at 15-16. But under the New Jersey act, the attorney general is authorized to promulgate "rules to further the purpose of the act," and had adopted a regulation requiring disclosure of the odometer readings. *Id.* at 16. The New Jersey court relied expressly on the regulation in rejecting the dealer's argument that failure to post the readings was not a deceptive act. *Id.* The CFA, in contrast, does not confer rulemaking power on the Arizona Attorney General, nor does it provide that failure to comply with some other statute is always evaluated under the Act Clause.

¶14 If the State's complaint had alleged only a single instance or isolated instances of non-pricing, the Omission Clause would provide the appropriate standard for adjudicating CFA liability. The complaint, however, alleged routine and repeated instances of non-pricing. The Act Clause prohibits not only acts, but also "practice[s]." The court of appeals correctly defined a practice as "a habitual action and something more than an accumulation of a number of individual instances of conduct." *AutoZone*, 227 Ariz. at 483 ¶ 38 & n.18, 258 P.3d at 301 & n.18. If AutoZone repeatedly failed to price items, a

8

finder of fact could well find a practice subject to the Act Clause.[4]

¶15    Neither party disputes that whether AutoZone had the intent required by the CFA is an issue of fact, regardless of whether the Act or the Omission Clause applies to the non-pricing allegations.  Thus, albeit for different reasons than those we rely upon here, the court of appeals correctly held that neither side was entitled to summary judgment.

**III.**

¶16    The Attorney General may seek injunctive relief to prevent violations of the CFA.  A.R.S. § 44-1528(A).  The superior court may also issue orders and judgments "as may be necessary to:"

    1. Prevent the use or employment by a person of any unlawful practices.

    2. Restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice in this article declared to be unlawful, including the appointment of a receiver.

*Id.*

¶17    The State does not seek restitution to consumers under § 44-1528(A)(2), but rather disgorgement of monies received by AutoZone in violation of the CFA, to go to the Attorney General

---

[4]    The Act Clause also requires that the relevant practice be "deceptive."  A.R.S. § 44-1522(A).  Whether AutoZone's alleged non-pricing was deceptive is not before us today.

9

for use in the consumer protection revolving fund, A.R.S. § 44-1531.01.  The State argues, and the court of appeals held, that such disgorgement is authorized by § 44-1528(A)(1).

¶18     We disagree.  As an initial matter, if the legislature intended in § 44-1528(A)(1) to authorize disgorgement to the State simply because that remedy "[p]revent[ed] the use or employment . . . of any unlawful practices," it is difficult to understand why § 44-1528(A)(2), which provides for restitution to consumers, is necessary, because restitution surely also serves such a purpose.  We do not interpret statutes so as to render any provision redundant.  *State ex rel. Dep't of Econ. Sec. v. Hayden*, 210 Ariz. 522, 523 ¶ 7, 115 P.3d 116, 117 (2005).

¶19     The State argues that disgorgement is generally within the court's equitable powers.  But we deal here with statutory, not equitable, remedies.  *See Blankenbaker v. Jonovich*, 205 Ariz. 383, 387 ¶ 18, 71 P.3d 910, 914 (2003) ("When . . . a statute 'creates a right and also provides a complete and valid remedy for the right created, the remedy thereby given is exclusive.'" (quoting *Valley Drive-In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 400, 291 P.2d 213, 215 (1955))).  The CFA expressly provides for restitution to consumers, but not disgorgement to the State.  "[I]t is an elemental canon of statutory construction that where a statute expressly provides a

particular remedy or remedies, a court must be chary of reading others into it." *Lancaster v. Ariz. Bd. of Regents*, 143 Ariz. 451, 457, 694 P.2d 281, 287 (App. 1984) (quoting *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979)). Moreover, the legislature plainly knew how to provide for disgorgement to the State. For example, A.R.S. § 44-7111 Section 7(e), which applies to the State's tobacco litigation settlement, provides that "the court shall order any profits, gain, gross receipts or other benefit from the violation to be disgorged and paid to the state general fund." The absence of a similar provision in the CFA suggests that no such remedy was intended in that statute.

**¶20** Moreover, other provisions of the CFA dealing with the disposition of awards to the State also do not mention disgorgement. The attorney general's revolving fund, to which the State proposes to direct any disgorgement, consists of "investigative or court costs, attorney fees or civil penalties recovered for the state by the attorney general as a result of enforcement." A.R.S. § 44-1531.01(B); *see also* A.R.S. § 44-1532 (providing for payment of penalties for violations of injunctions and orders to the general fund). The absence of any reference in these provisions to disgorgement cuts against the judicial implication of such a remedy into § 44-1528(A)(1).

11

¶21        The State also relies on § 44-1522(C), which states that "in construing subsection A . . . the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code §§ 45, 52 and 55(a)(1)," and argues that because courts have found disgorgement to the federal government permissible under the Federal Trade Commission Act, we should interpret Arizona's CFA similarly.  But federal courts ordering disgorgement have relied not on the code sections cited in § 44-1522(C), but instead on a provision not cited in the CFA: 15 U.S.C. § 53, the general remedies provision of the federal act.  *See, e.g.*, *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994); *FTC v. QT, Inc.*, 448 F. Supp. 2d 908, 974 (N.D. Ill. 2006), *amended on reconsideration in part*, 472 F. Supp. 2d 990 (N.D. Ill. 2007), *aff'd*, 512 F.3d 858 (7th Cir. 2008).  The United States Code sections cited in § 44-1522(C) define the acts, practices, and omissions prohibited by the federal act, not the remedies available to a court finding a violation, and thus do not support implication of a disgorgement remedy into the CFA.

¶22        The CFA was based on legislation developed by the Council on State Government's Committee on Suggested State Legislation.  *See* William A. Lovett, *State Deceptive Trade Practice Legislation*, 46 Tul. L. Rev. 724, 731-32 (1972).  Iowa was among the states adopting this model legislation, and its

12

supreme court held that Iowa's original version of the statute, which contained language similar to § 44-1528(A), did not allow for disgorgement to the state. *State ex rel. Miller v. Santa Rosa Sales & Mktg., Inc.*, 475 N.W.2d 210, 219 (Iowa 1991). The Iowa act was later amended specifically to provide for disgorgement. 1992 Iowa Legis. Serv. 1062 (West) (S.F. 2276). Unless and until our legislature follows suit, we agree with the Iowa court that this remedy should not be read by the courts into the existing statute.

**IV.**

¶23    The State sought and was awarded attorney's fees by the court of appeals and also seeks them from us. "In any action brought under the provisions of this article, the attorney general is entitled to recover costs, which in the discretion of the court may include a sum representing reasonable attorney's fees for the services rendered, for the use of the state." A.R.S. § 44-1534. The court of appeals awarded the State attorney's fees under this provision. *AutoZone*, 227 Ariz. at 485 ¶ 44, 258 P.3d at 303.

¶24    Although § 44-1534 does not expressly require that the State be the prevailing party to recover fees and costs, that requirement is surely implicit in the statute; we cannot imagine that the legislature would authorize an award of fees to the State for an unsuccessful suit. The opinion below did not

13

mandate judgment for the State, but rather remanded the case for trial. We cannot conclude that the State has yet prevailed in this litigation, particularly because it acceded to the judgment "by necessity" despite the original superior court ruling that a trial was warranted.

¶25 In limited instances, a successful interlocutory appeal may qualify a party as prevailing for purposes of a fee award, particularly when a new or important principle of law is established. *Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 392–94, 710 P.2d 1025, 1047–49 (1985). But that is not the case here. The court of appeals did not explain why it found an interlocutory award of fees appropriate, but to the extent the award was based on the State's success in espousing its disgorgement theory, our opinion today compels a different conclusion. We therefore vacate the award of fees and costs in the court of appeals and deny the State's similar request in this Court, without prejudice to the State renewing its application should it eventually prevail.

## V.

¶26 For the reasons above, we vacate the opinion of the court of appeals with respect to the three issues on which review was granted, and we remand to the superior court for proceedings consistent with this opinion and the remaining portions of the opinion below.

14

_____
                    Andrew D. Hurwitz, Vice Chief Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice