NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LORI SUE VILLA, *Petitioner/Appellee*,

*v.*

DAVID DANIEL VILLA, *Respondent/Appellee*.

BROOKS GIBSON, in his capacity as Parenting Coordinator,
*Appellant.*

No. 1 CA-CV 15-0099 FC
FILED 10-20-2016

Appeal from the Superior Court in Maricopa County
No.  FC2007-005355
The Honorable Gerald Porter, Judge (Retired)

**AFFIRMED**

COUNSEL

Joseph W. Charles, Glendale
*Counsel for Appellant*

Law Office of Judith E. Abramsohn, Phoenix
By Judith E. Abramsohn
*Counsel for Appellee David Villa*

Pearson Law Group, LLC, Phoenix
By Catherine M. Pearson
*Counsel for Appellee Lori Villa*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Margaret H. Downie joined.

---

**T H U M M A**, Judge:

¶1        Parenting coordinator Brooks Gibson appeals from an order refusing to vacate a previous order requiring him to disgorge fees parents paid to him. Because the superior court had jurisdiction to order disgorgement, and did not err in doing so, the order is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2        Lori Sue Villa nka Sutorka (Mother) and David Daniel Villa (Father) divorced in 2007. Later, they agreed that Gibson would serve as the parenting coordinator for issues involving their two sons. *See* Ariz. R. Fam. Law P. 74 (2014); *see also* Ariz. Rev. Stat. (A.R.S.) §§ 25-405, -410 (2016).[1] In January 2013, the court issued a lengthy order appointing Gibson parenting coordinator. Among other things, that order specified Gibson would serve for 12 months, subject to court removal, ordered that Gibson "shall keep accurate records of services rendered" and addressed fees for Gibson's services.

¶3        Father later learned that Gibson's counseling license had been surrendered effective November 2012 pursuant to a consent agreement with the state regulatory agency.[2] As a result, Father moved to discharge Gibson for cause and for reimbursement of the fees Mother and Father had paid Gibson. Although Mother and Father disagreed about Gibson's

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. Because Ariz. R. Fam. Law P. 74 was amended effective January 1, 2016, the prior version of Rule 74 (in place during the relevant events here) is cited throughout.

[2] Although Gibson disputes the reason for the surrender, he does not dispute that his license was surrendered effective November 2012. The consent agreement specified that Gibson's surrender of his license would be treated as a revocation.

qualifications, they agreed that his fees were unreasonable and his billing was inadequate.

¶4 In a February 2014 minute entry sent to Gibson and the parties, the court set a March 2014 return hearing on Father's motion. At the March 2014 hearing, the court discharged Gibson from any further duties and set an evidentiary hearing on Father's motion to be held on April 21, 2014, with a copy of the resulting minute entry sent to Gibson and the parties. At the April 21, 2014 hearing, Mother and Father testified and provided exhibits received by the court, Gibson testified (including about exhibits marked for identification) and the court took the matter under advisement. During that hearing, the court repeatedly told Gibson that, if he was not discharged for cause, he would be required to provide the court and the parties a detailed billing statement so the court could determine the reasonableness of his fees.

¶5 The court, in a May 1, 2014, minute entry sent to Gibson and the parties, did not discharge Gibson for cause but directed that "Gibson shall within thirty days provide a detailed billing to the Court and the parties outlining by date and time in chronological order the services that were provided and the amounts charged to each party." The record indicates Gibson never complied with this order.[3]

¶6 In early July 2014, Mother and Father filed a joint motion (showing service on Gibson) for an order that Gibson disgorge all fees he had been paid or, alternatively, that Gibson submit the detailed billing information to the court and the parties within 10 days. On July 24, 2014, Gibson filed a response, asking for 30 more days to submit billing information.[4] By September 2014, however, Gibson had not provided such information. On September 2, 2014, the court granted the joint motion for disgorgement and on October 22, 2014, entered a judgment directing Gibson to disgorge $11,495 in fees paid by Mother and Father. Gibson did not timely appeal from that judgment.

---

[3] Gibson apparently attempted to send the Court (but not Mother and Father) a May 2014 letter, which was stricken by the court later that month and is not part of the record on appeal.

[4] It appears, from the record, that the court did not act on Gibson's request for 30 additional days to submit the billing information. But, given that the court did not grant the motion for disgorgement until September 2, 2014, Gibson had sufficient time to submit such information but did not do so.

¶7            On November 13, 2014, Gibson filed a motion to set aside the judgment "pursuant to Rules 55(c) and 59, 60(c)(1) and (6)," apparently referencing the Arizona Rules of Civil Procedure. The motion argued Gibson's failure to comply with the various orders was due to excusable neglect, claimed (without supporting authority) that he had a meritorious defense and claimed that "equity demands" the judgment be set aside. The superior court denied the motion and this appeal followed. This court has jurisdiction over Gibson's timely appeal of the denial of his motion to set aside. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.      The Superior Court Had Personal Jurisdiction Over Gibson.

¶8            Gibson argues that the superior court lacked personal jurisdiction over him, an issue this court reviews de novo. *State v. Donahoe*, 220 Ariz. 126, 127 n.1 (App. 2009). Any services Gibson provided, however, were pursuant to the superior court's order, to which Gibson did not object, and which governed his involvement in the case. Even more significantly, Gibson personally appeared, litigated disgorgement, made filings and testified and, by doing so, waived any objection he may have had to personal jurisdiction. *See Tarr v. Superior Court (Jensen)*, 142 Ariz. 349, 351 (1984) (citations omitted).

¶9            Gibson argues that "[a] trial court is precluded from asserting jurisdiction over a party when there had been no service of process to a non-party in the underlying action or a full opportunity to contest the allegations against it." In making this argument, Gibson relies exclusively on *MCA Financial Group, Ltd. v. Enterprise Bank & Trust*, 236 Ariz. 490 (App. 2014). *MCA*, however, is distinguishable.

¶10           In *MCA*, an individual, who was employed by an entity, was appointed receiver. *Id.* at 492 ¶ 3. After the individual performed services as receiver, and was paid receiver fees, a party sought disgorgement of those fees, which had been paid to the entity. *Id.* at 493 ¶ 5. The objecting party, however, did not join the entity as a party, the entity was not the receiver and the entity made a special appearance for the limited purpose of challenging the allegations in the disgorgement motion and argued that the motion was procedurally improper. *Id.* On appeal, the court reversed an order requiring the entity to disgorge payments, finding the entity was not a party, was not the receiver and was not named in the underlying lawsuit, "the receivership proceedings, or the disgorgement motion as a

party against whom relief was sought," meaning the superior court lacked personal jurisdiction over the entity. *Id.* at 495 ¶ 12.

¶11 Unlike the entity in *MCA*, Gibson was the parenting coordinator serving pursuant to the superior court's order and, in doing so, submitted to the court's jurisdiction. Gibson was named in the disgorgement motion, was served with that motion, had knowledge of the proceedings on that motion and, in fact, generally appeared and participated in those proceedings. Given these differences, *MCA* does not stand for the proposition that the superior court lacked personal jurisdiction over Gibson. For these reasons, the superior court properly exercised personal jurisdiction over Gibson in considering the disgorgement motion.

## II. Gibson's Due Process Rights Were Not Violated.

¶12 Gibson argues he "has not been afforded the due process rights of a plenary hearing." Gibson, however, failed to raise this argument with the superior court and cannot do so for the first time on appeal. *See Trantor v. Fredrickson*, 179 Ariz. 299, 300 (1994). Moreover, Gibson has not shown that he was denied any due process right to which he was entitled. *See Emmett McLoughlin Realty, Inc. v. Pima County*, 212 Ariz. 351, 355 ¶ 17 (App. 2006) (noting, as applicable here, that due process requires "adequate notice and . . . the opportunity to be heard at a meaningful time and in a meaningful manner").

¶13 Gibson asserts that he was not given "the opportunity to refute the allegations made against him." The record, however, is to the contrary. The record shows that Gibson received advance notice of the evidentiary hearing, appeared at that hearing, testified and indicated that he understood what was required of him. After that evidentiary hearing, Gibson was given several chances to support the fees he was claiming. But, as noted above, he failed to do so.

¶14 During oral argument before this court, Gibson's counsel intimated that Gibson offered billing records to the superior court at the April 21, 2014 hearing but that offer was refused. The transcript from the April 21, 2014 hearing, however, reveals the following exchange:

> MR. GIBSON: I've already submitted all of -- all of our -- my sessions are recorded with the parties, I've already submitted all those recordings to the court. I've already submitted my work product --
>
> THE COURT: And I'm going to hand that back
>
> MR. GIBSON: notes --
>
> THE COURT: -- to you, just so you know.
>
> MR. GIBSON: -- 55 pages.

The superior court then specifically told Gibson that he did not want those records but wanted itemized billing statements so that he could "look at the reasonableness of [his] fees." The court was clear that the documents Mr. Gibson offered did not constitute the itemized billing statements that the court would require him to submit.

¶15 Gibson contends that he did not know how to comply with the court's order and had no notice of the May 1, 2014 ruling summarizing the April 21, 2014 hearing. At the April 21, 2014 hearing, however, the court explained what Gibson was required to do and Gibson told the court that he understood what was required of him. Moreover, the May 1, 2014 ruling simply commits to writing the court's express directives at the April 21, 2014 hearing. Finally, Gibson's assertion that he had never prepared a court-ordered itemized billing statement is irrelevant. Gibson had notice of the allegations against him and he had a reasonable opportunity to be heard and to comply with the requirement that he provide itemized billing statements. On this record, Gibson has not shown that his due process rights were violated.

### III. The Disgorgement Order Did Not Result In Unjust Enrichment.

**¶16**        Although conceding an award of expert fees is reviewed for an abuse of discretion, Gibson argues the disgorgement ruling unjustly enriches Mother and Father. Again, it does not appear that Gibson raised this argument with the superior court and, accordingly, it may be deemed waived. *See Trantor*, 179 Ariz. at 300. Moreover, classically, disgorgement focuses on the conduct of the party required to return the money, not on the benefit to the party receiving the disgorged funds. *Cf. Hirsch v. Ariz. Corp. Comm'n*, 237 Ariz. 456, 466 ¶ 41 (App. 2015) (noting "'[d]isgorgement does not aim to compensate the [recipients of the disgorged funds], as restitution does'") (citation omitted). Under this analysis, Gibson's focus on any benefit to the parties is misplaced.

**¶17**        Claiming he was entitled to payment for his services in quantum meruit, Gibson cites *Schwartz v. Schwerin*, 85 Ariz. 242 (1959). As noted in *Schwartz*, quantum meruit focuses on "the reasonable value of services rendered" where no contractual payment term applies. *Id.* at 245. This is, in essence, what the superior court was targeting in directing Gibson to provide detailed billing records. Gibson, however, failed to do so after repeated opportunities. In this respect, even if Gibson's quantum meruit claim was timely asserted and legally supported, as in *Schwartz*, Gibson "failed or refused at that time to give any approximation on the time element [for his services] and was very evasive as to any question submitted to him on this point." *Id.* at 247. Moreover, despite several opportunities, Gibson failed to give the superior court or the parties the opportunity to review his fees and determine reasonableness with supporting proof. Accordingly, Gibson has not shown an entitlement to fees on a quantum meruit basis or that the disgorgement results in an improper unjust enrichment.

### IV. The Superior Court Had Authority To Order Disgorgement.

**¶18**        Gibson argues the superior court lacked authority to order disgorgement because Rule 74 "does not discuss or mention disgorgement as a remedy." Gibson, however, did not raise this argument in his opening brief and this court typically does not address issues raised for the first time in a reply brief on appeal. *See Dawson v. Withycombe*, 216 Ariz. 84, 111 ¶ 91 (App. 2007).

**¶19**          Essentially, Gibson argues that parties were required to pay, and the superior court was required to approve, his services regardless of whether they were reasonable or supported by appropriate billing, with no recourse other than removing him as a parenting coordinator. This is not the law. The superior court properly may construe and enforce applicable rules and orders "in a manner to secure the just, prompt and inexpensive determination of every action and proceeding." Ariz. R. Fam. Law P. 1; *see also* A.R.S. § 25-410(B) (requiring fees charged be "reasonable" and cited in the parenting coordinator order issued in this case). And "a superior court judge has inherent authority to conduct such proceedings and issue such orders as are necessary to the complete administration of justice." *Arpaio v. Baca*, 217 Ariz. 570, 576 ¶ 19 (App. 2008) (citations omitted).

**¶20**          Gibson cites *State ex rel. Horne v. AutoZone, Inc.*, 229 Ariz. 358 (2012) for the proposition that disgorgement was not a proper remedy here. *AutoZone*, however, dealt with the availability of "statutory, not equitable, remedies." *Id.* at 362 ¶ 19. Because the applicable statute expressly authorized restitution, *AutoZone* found that disgorgement was not authorized. *Id.* Here, by contrast, A.R.S. § 25-410(B) mandates that fees charged be reasonable and Rule 74 does not mention express remedies for a parent coordinator's inability to justify fees charged. Accordingly, the proposition relied upon in *AutoZone* — "'where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it'" — has no application here. *Id.* (citation omitted).

**¶21**          The court's order appointing Gibson required that he keep accurate records of services rendered and A.R.S. § 25-410(B)—one of the statutory bases for the order—required that the fees be reasonable. These provisions vested the superior court with the power to determine whether the fees Gibson charged were reasonable, a power that logically includes the remedy of disgorgement. When those services and fees were questioned, the superior court directed Gibson more than once to disclose supporting documentation. And when he failed to do so after numerous opportunities, the court determined that he had not shown his fees were reasonable. The court then ordered disgorgement. On this record, Gibson has not shown the disgorgement order was beyond the authority of the superior court.

## V.  Attorneys' Fees And Costs.

**¶22**        Gibson requests an award of attorneys' fees and costs incurred before the superior court and on appeal pursuant to A.R.S. § 12-341.01(A) and Arizona Rule of Civil Appellate Procedure (ARCAP) 21. Mother and Father seek attorneys' fees and costs on appeal pursuant to A.R.S. §§ 12-349 and 12-341.01. Because Gibson is not the successful party, his request is denied. Although Mother and Father are the successful parties on appeal, they have not shown that an award of attorneys' fees under A.R.S. § 12-349 is justified here and have not shown entitlement to an award of attorneys' fees under A.R.S. § 12-341.01. Accordingly, their request for attorneys' fees is denied, but their request for taxable costs on appeal is granted, contingent upon their compliance with ARCAP 21.

### CONCLUSION

**¶23**        The superior court's denial of Gibson's motion to set aside judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

9